UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EILEEN THOMPSON,

    Plaintiff,

v.

                                            Case No. 1:10-cv-995
                                            Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**OPINION**

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on April 19, 1955 (AR 79).[1] Plaintiff alleged a disability onset date of July 15, 2007 (AR 79). She completed the 12th grade (AR 122). Plaintiff had previous employment as a grocery store cashier and as an inserter at a newspaper (AR 128-30). Plaintiff identified her disabling condition as a seizure disorder (AR 118). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 19, 2010 (AR 8-13). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.[2]

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes a discrepancy in the record with respect to the scope of this appeal. Plaintiff filed an application for SSI on August 2, 2007 (AR 79-82). While there is no record of her filing a separate application for DIB, the ALJ adjudicated a DIB claim based upon the August 2, 2007 application (AR 13). For purposes of this appeal, the court will defer to the ALJ's characterization of the August 2, 2007 application and review plaintiff's claim as seeking both DIB and SSI.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

3

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the sequential evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 27, 2007 and met the insured status requirements for DIB through December 31, 2010 (AR 10). Second, the ALJ found that plaintiff had a severe impairment of a seizure disorder (AR 10). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 11). In this regard, the ALJ reviewed Listings 11.02 (Epilepsy - convulsive epilepsy) and 11.03 (Epilepsy - nonconvulsive epilepsy) (AR 11). The ALJ decided at the fourth step that plaintiff had:

> the residual functional capacity to work with no exertional limitations (20 CFR 416.967(b)); but she may never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs, balance, stoop, knee; crouch, or crawl; avoiding all exposure to the hazards of unprotected heights or operating moving machinery.

(AR 11). The ALJ also found that plaintiff could perform her past relevant work as a grocery store cashier, work which does not require performance of work-related activities precluded by her residual functional capacity (RFC) (AR 12-13). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 15, 2007 through the date of the decision (January 19, 2010) (AR 13).

## III. ANALYSIS

Plaintiff was represented by counsel during the administrative review. However, she filed this appeal *pro se*. Based on her filings, the court has gleaned the two issues for appeal:

> **A. Plaintiff is disabled due to daytime seizures with loss of consciousness.**

Plaintiff contends that she is disabled due to seizures. The ALJ rejected plaintiff's claim that she suffered from two seizures per month due to lack of supporting medical evidence (AR 10-11). The ALJ noted that plaintiff's most current medical record was from September 2, 2008, more than one year prior to the administrative hearing held on November 4, 2009 (AR 10, 20). Plaintiff's most recent treatment had been on July 31, 2008, with Hisanori Hasegawa, M.D., of Bronson Neurological Services (AR 10, 199-200). At that time, plaintiff reported having four seizures a month while on the maximum dosage of Lamictal and a moderate does of Dilantin (AR 10, 199-200). Plaintiff was described as a "poor historian" and described having a "sudden onset of blackout" lasting for a couple of minutes (AR 199). Plaintiff denied experiencing a head injury or mental retardation (AR 199). After examination, Dr. Hasegawa concluded that plaintiff "has a history of a seizure disorder of uncertain and undetermined etiology and is not responding to a maximized dose of lamotrigene" (AR 200). A treatment plan would include an EEG (electroencephalogram) study to evaluate plaintiff's current seizure control status and determine if lamotrigene is of any clinical benefit and a follow-up of her condition for three to four months to determine if the medication should be adjusted (AR 200).

The EEG study, performed on September 2, 2008, was abnormal (AR 204-05). The findings suggested "a partial complex seizure originating from left temporal lobe, contralateral discharges in the right temporal lobe, suggestive of a secondary epileptogenesis" (AR 205). There is no further record of treatment with Dr. Hasegawa. The ALJ noted that plaintiff testified that she did not return to see the doctor because she could not afford it (AR 11). However, plaintiff further

5

testified that the doctor continues to re-fill her medications, including Lamictal and Dilantin (AR 11).

### 1. Plaintiff was not disabled under the Listings

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Here, the ALJ reviewed two listings, 11.02 and 11.03, and found that plaintiff did not meet the requirements of either listing:

> Claimant's seizure disorder does not meet Listings [sic] 11.02 because the medical record does not show convulsive epilepsy, (grand mal or psychomotor),

>documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment with: A. Daytime episodes (loss of consciousness and convulsive seizures) or B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day. Nor does the objective medical record show that it meets Listing 11.03, nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment with alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

(AR 11).

Plaintiff provided minimal medical records regarding the frequency and treatment of her seizure condition. Dr. Hasegawa's treatment records do not satisfy the requirements of the listings. Accordingly, the ALJ's determination is supported by substantial evidence.

### 2. Plaintiff was not credible

The ALJ found that plaintiff's seizure disorder could reasonably be expected to produce the alleged symptoms (AR 12). However, the ALJ found that plaintiff's statements concerning her impairments and its impact on her ability to work were not entirely credible in light of the lack of treatment history; the apparent control of any seizures with continued medication; and plaintiff's concession that she can work (AR 12). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff testified that she was terminated from her most recent employment at the newspaper because she hit (or "tapped") her boss on the head with some ads (AR 29). At the administrative hearing, plaintiff testified that she is able to work and pursued unemployment compensation after the termination of her employment in July 2007 (AR 11-12, 27-30). Plaintiff drew unemployment from 2007 through 2009, at which time she told the state authorities that she was ready, willing and able to work, and would have worked, during that time period (AR 29). The ALJ found plaintiff's position regarding her ability to work is inconsistent:

> Claimant started receiving unemployment compensation in July 2007. To draw unemployment, an applicant must assure the government she is ready, willing and able to work. While this is not necessarily in direct conflict with an application for social security disability benefits, I find claimant's assertion in one forum that she *can* work and her simultaneous assertion in another forum that she *cannot* work bears upon her credibility. Further, at the hearing, claimant admitted that she can work.

(AR 12) (emphasis in original).

In evaluating plaintiff's claim for DIB, it is appropriate for an ALJ to consider plaintiff's act of filing for unemployment benefits. "Applications for unemployment and disability benefits are inherently inconsistent." *Workman v. Commissioner of Social Security*, 105 Fed. Appx.

8

794, 801 (6th Cir. 2004), citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) ("[a]lthough she claims that she was unable to work in 1977, [the claimant] filed for unemployment in 1978 exhibiting the fact that she felt that she was capable of working at that time"). *See also*, *Bowden v. Commissioner Social Security*, No. 97-1629, 1999 WL 98378 at *7 (6th Cir. Jan. 29, 1999) (court observed that while a claimant argued that the inherent inconsistency in filing for disability benefits and unemployment benefits "should not be embraced . . . she offer[ed] no reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work"). Courts have considered a claimant's application for or receipt of unemployment benefits as relevant to the claimant's credibility. *See, e.g., Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (while receipt of unemployment benefits may not be "proof positive" of a claimant's ability to work, the court should consider it in evaluating the claimant's credibility); *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991) (because the claimant's application for unemployment benefits "necessarily indicates that [the claimant] was able to work, this may be some evidence, though not conclusive, to negate his claim that he was disabled"). Accordingly, the ALJ could properly find that plaintiff's testimony regarding her alleged disability was not entirely credible.

### 3. Plaintiff retained the residual functional capacity to perform her past relevant work

At step four of the sequential evaluation, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform her past relevant work as a grocery cashier (AR 12). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the

individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

In reaching this determination, the ALJ relied on the opinion of the "State Agency physician who reviewed the case at the initial level" and agreed with the physician's ultimate conclusion that plaintiff was not disabled (AR 11-12). The ALJ did not include a citation to this report. However, the only such report in the record is the physical RFC assessment prepared by a non-examining physician, Glen Douglass, M.D. (AR 186-93). This evaluation, prepared on October 19, 2007, was based upon an extremely limited record, with Dr. Douglass noting that plaintiff has no medical source and saw a doctor once in 2004 (AR 191). Dr. Douglass found that plaintiff's last seizure was in August 2007, that the reported frequency is twice per month, and that the seizures "[s]tarted petit mal, then psychomotor, now complex partial" (AR 191). The doctor found that plaintiff does the dishes, goes to the library and park, handles personal care independently, fixes daily meals, does household chores, shops weekly and walks about 1/2 mile (AR 191). In addition, plaintiff does not drive due to seizures (AR 191). Based on this record, Dr. Douglass found that plaintiff should avoid climbing ropes, ladders and scaffolds, and should avoid hazards (machinery, heights, etc.) (AR 188, 190). Although Dr. Douglass' report was completed two years before the administrative hearing, the only additional medical records involve plaintiff's treatment with Dr. Hasegawa in July and September 2008. As previously discussed, the ALJ reviewed this subsequent treatment in detail (AR 10-11).

The ALJ relied on the testimony of a vocational expert to determine that plaintiff could perform her past relevant work. The ALJ may use a vocational expert's services in

determining whether a claimant can perform his past relevant work. *D'Angelo v. Commissioner of Social Security*, 475 F. Supp.2d 716, 724 (W.D. Mich. 2007); 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). When the court obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the VE testified that a person with plaintiff's RFC (i.e., postural limitations and the need to avoid working near hazardous machinery) could perform plaintiff's past relevant work as a grocery store cashier (AR 33). The ALJ could rely on this testimony to support his determination that plaintiff was not disabled at step four of the sequential evaluation. *See* 20 C.F.R. § 404.1560(b)(2); *D'Angelo*, 475 F.Supp.2d at 723-24. Based on this record, the court concludes that the ALJ's RFC assessment and determination that plaintiff could perform her past relevant work is supported by substantial evidence.

**B.** **Sentence Six Remand**

Finally, plaintiff seeks to have the court consider new evidence. In her reply brief, plaintiff submitted a letter from her neighbor Karen S. Starling (dated April 29, 2011) and a letter

from her roommate Walter Calvin (dated April 30, 2011) regarding the frequency of plaintiff's seizures and her ability to work. *See* Starling and Calvin Letters (docket no. 14-1). Several months after the briefing schedule expired, plaintiff submitted a supplement, consisting of a letter from Bronson Neurological Services (dated October 7, 2011), which stated that plaintiff was unable to return to work because of "epilepsy 2/spell month on average." *See* Supplement (docket no. 18-1).[3]

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The letters from Karen Starling and Walter Calvin were written more than one year after the ALJ denied plaintiff's claim. These letters were submitted for the sole purpose of

---

[3] The signature and handwritten "comments" appearing in this letter are unintelligible.

contesting the ALJ's decision. Good cause does not exist for a sentence-six remand, where the new evidence to be examined on remand was secured by a claimant after the ALJ entered a decision and then submitted to contest that decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (in denying the plaintiff's request for a sentence-six remand, in which the plaintiff sought to add new evidence in the form of a medical opinion that critiqued the ALJ's decision, the court held that there was not "good cause" for a remand, because allowing this opinion "would amount to automatic permission to supplement the administrative records with new evidence after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process"); *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (explaining that the good cause requirement would be meaningless if every time a claimant lost before the agency he was free to seek out a new expert witness who might better support his position).

The letter from Bronson Neurological Services falls into a different category. It appears that this letter was issued by a doctor who examined plaintiff on October 7, 2011. Good cause could exist for plaintiff's failure to present evidence of subsequent medical treatment to the ALJ. *See e.g., Nelson v. Shalala*, 93-35343, 1994 WL 108930 (9th Cir. March 29, 1994) (noting that physicians, not patients, order medical tests); *Stubbs v. Apfel*, No. 97-C-7069, 1998 WL 547107 at * 11 (N.D. Ill. Aug. 20, 1998) (good cause shown to remand for consideration of MRI results when claimant could not afford the test until after the ALJ issued his opinion).

However, this new evidence is not material to plaintiff's claim. In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Plaintiff has not

13

met his burden. While the October 7, 2011 letter indicates plaintiff's condition as of that date, the letter does not reflect plaintiff's condition during the relevant time period, i.e., between July 15, 2007 (the alleged disability onset date) and January 19, 2010 (the date of the ALJ's decision). *See Mingus v. Commissioner*, No. 98-6270, 1999 WL 644341 at *5 (6th Cir. Aug. 19, 1999) (deterioration of plaintiff's eyesight in August 1996 is not relevant to plaintiff's condition as it existed on her last insured date of December 31, 1993); *VanVolkenburg v. Secretary of Health and Human Services*, No. 8-1228, 1988 WL 129913 at *3 (6th Cir. Dec. 7, 1988) (deterioration of plaintiff's condition in 1987 not material to her condition in 1985); *Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (new medical evidence compiled in March 1985 that may show a deterioration in the claimant's condition "does not reveal further information about the claimant's ability to perform light or sedentary work in December 1983"). Accordingly, plaintiff's request for a sentence-six remand to review this new evidence will be denied.

### IV. CONCLUSION

The Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: March 16, 2012                          /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge